**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LEONID KOVALCHUK, | ) Case No.: 1:26-cv-00978-JLT-SKO (HC) |
| Petitioner, | ) A-Number: 071-309-206 |
| | ) |
| | ) ORDER VACATING PREVIOUS FINDINGS AND |
| v. | ) RECOMMENDATIONS |
| | ) [Doc. 23] |
| | ) |
| N. MARTINEZ, et al., | ) FINDINGS AND RECOMMENDATION TO |
| | ) GRANT PETITION FOR WRIT OF HABEAS |
| Respondents. | ) CORPUS |
| | ) |
| | ) [10-DAY OBJECTION DEADLINE] |

Petitioner is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner filed the instant petition on January 8, 2026. (Doc. 1.) Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his continued detention is unlawful and violates 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001). He claims he should be immediately released.

On March 6, 2026, Respondent filed a response to the petition. (Doc. 22.) The response did not respond to Petitioner's claims. Respondents argued that Petitioner's detention was mandatory pursuant to 28 U.S.C. § 1225(b)(2)(A), but failed to address Petitioner's claim that his prolonged detention is

1

unreasonable as there is no significant likelihood of removal in the reasonably foreseeable future. Respondents also failed to provide any relevant documentation from Petitioner's alien file despite the Court's order to do so. Accordingly, the Court issued Findings and Recommendation on March 11, 2026, on the assumption that Respondents conceded Petitioner's contention. (Doc. 23.)

On March 17, 2026, Respondents filed objections to the Findings and Recommendations. (Doc. 24.) Respondents acknowledge that they failed to provide any additional information despite the Court's order. Respondent offers no reason for the failure but states, "Now Respondents submit this filing with additional information." (Doc. 24 at 1.) Respondent's failure to respond and failure to provide any reason for the failure to respond, is disturbing to say the least. The Court also now has information from which it can make a more complete finding and recommendation. Thus, the Court will vacate the earlier Findings and Recommendations and issue the following Findings and Recommendation to grant the petition.

## I.    BACKGROUND

Petitioner was born in the former Soviet Union. (Doc. 1 at 3.) He is a native and citizen of Kazakhstan who entered the United States as a refugee on or about May 30, 1996. (Id.; Doc. 24-1 at 2.)

Petitioner has a lengthy criminal history during his time in the United States:

- On December 16, 1997, he was convicted of inflicting corporal injury on a spouse (Cal. Penal Code § 273.5(a)) and willful cruelty to a child (Cal. Penal Code § 273A(b)).
- On May 22, 1998, he was convicted of inflicting corporal injury on a spouse (Cal. Penal Code § 273.5(a)).
- On October 28, 1998, he was convicted of driving under the influence (Cal. Vehicle Code § 23152(b)).
- On December 27, 1999, he was convicted of spousal battery (Cal. Penal Code § 243(e)(1)), and contempt of court (Cal. Penal Code § 166(c)(1)).
- On July 21, 2001, he was convicted of inflicting corporal injury on a spouse (Cal. Penal Code § 273.5(a)).

2

- In 2004, he was convicted of driving under the influence (Cal. Vehicle Code § 23152(a)), and driving with a suspended license (Cal. Vehicle Code § 14601.1(a)).

- On March 29, 2011, he was convicted of assault with a deadly weapon with great bodily injury likely, in violation of Cal. Penal Code § 245(a)(1)).

- On October 6, 2011, he was convicted of trespass in violation of Cal. Penal Code § 602(o).

- On August 1, 2012, he was convicted of inflicting corporal injury on a spouse, in violation of Cal. Penal Code § 273.5(a), and willful cruelty to child in violation of Cal. Penal Code § 273A(b).

- On November 20, 2014, he was convicted of contempt for violating a protective order in violation of Cal. Penal Code §166(c)(1).

- On June 30, 2020, he was convicted of inflicting corporal injury on a spouse in violation of Cal. Penal Code § 273.5(a), assault with a deadly weapon with force in violation of Cal. Penal Code § 245(a)(4), violating a protective order with priors in violation of Cal. Penal Code § 166(c)(4), and contempt for violating a protective order in violation of Cal. Penal Code § 166(c)(1).

- On December 13, 2022, he was convicted of two counts of contempt for violating a protective order in violation of Cal. Penal Code § 166(c)(1).

- On March 15, 2023, he was convicted of contempt for violating a protective order in violation of Cal. Penal Code § 166(c)(1).

- On June 23, 2023, he was convicted of contempt for violating a protective order in violation of Cal. Penal Code § 166(c)(1).

- On February 20, 2024, he was convicted of three counts of contempt for violating a protective order with priors in violation of Cal. Penal Code § 166(c)(4).

- On May 1, 2024, he was convicted of contempt for violating a protective order in violation of Cal. Penal Code § 166(c)(1).

- On June 21, 2024, he was convicted of contempt for violating a protective order in violation of Cal. Penal Code § 166(c)(1).

- On October 9, 2024, he was convicted of assault with a deadly weapon in violation of Cal. Penal Code § 245(a)(1).

- On April 17, 2025, he was convicted of contempt for violating a protective order in violation of Cal. Penal Code § 166(c)(1).

- Petitioner has also been routinely and repeatedly arrested for contempt for violating a protective order (Cal. Penal Code § 166(c)(1)), inflicting corporal injury on a spouse (Cal. Penal Code § 273.5(a)), disorderly conduct (Cal. Penal Code § 647(f)), spousal battery (Cal. Penal Code § 243(e)(1)), assault with a deadly weapon (Cal. Penal Code § 245(a)(1)), assault (Cal. Penal Code § 240), battery (Cal. Penal Code § 242), child cruelty (Cal. Penal Code § 273A(a)), among other crimes.

(Doc. 24-1 at 2-10.)

On July 16, 2017, an Immigration Judge ("IJ") ordered Petitioner's removal from the United States. (Doc. 24-1 at 6.) On January 25, 2017, the order of removal became final with the denial of Petitioner's appeal. (Doc. 24-1 at 6.) On July 20, 2017, Petitioner was released on an Order of Supervision ("OSUP") after attempts to remove Petitioner to Kazakhstan were denied. (Id.)

On May 20, 2025, Petitioner was arrested and detained by ICE on an administratively final order of removal with serious criminal history. (Doc. 24-1 at 10.) Petitioner has remained in custody, and Respondents have been unable to remove him. (Doc. 1 at 4; 24-1 at 10.) On November 10, 2025, Petitioner was placed on a flight departing the United States to Kazakhstan but was refused entry into Kazakhstan. (Id.; Doc. 1 at 4.) He was returned to the United States and has remained in ICE custody. (Id.)

## II.    DISCUSSION

### A.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-

Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). The Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention. See Demore v. Kim, 538 U.S. 510, 517 (2003).

B.  Detention under 8 U.S.C. § 1231(a)(6)

When a final order of removal has been entered against an alien, the Government must facilitate that alien's removal within a 90–day "removal period." See Xi v. INS, 298 F.3d 832, 834-35 (9th Cir.2002) (citing 8 U.S.C. § 1231(a)(1)). During this removal period, the Government must detain that alien until he or she is actually removed. See 8 U.S.C. § 1231(a)(2). In situations where removal cannot be accomplished within 90 days, detention beyond the removal period is authorized by § 1231(a)(6), which provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or conditions of entry, for committing a criminal offense, or for reasons of national security or foreign policy,] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court considered the petitions of two resident aliens who challenged the constitutionality of their § 1231(a)(6) detentions. Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Although no country was willing to accept either alien once they were ordered removed, the Government continued to detain them for years after the expiration of § 1231(a)(1)'s 90-day removal period. Id. at 684-86. The Zadvydas Court reasoned that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. Id. at 690. Applying the constitutional avoidance doctrine to avoid this potential problem, Zadvydas held that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal" and "does not permit indefinite detention." Id. at 689. Zadvydas then concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6)]." Id. at 699.

Under Zadvydas, a presumptively reasonable period of post-removal detention is limited to six months. After the presumptively reasonable "6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Petitioner has been detained for ten months and contends there is no significant likelihood of removal. He states that the Government has attempted on several occasions to remove him to Kazakhstan, but every attempt has proven unsuccessful. Indeed, Petitioner was placed on a flight to Kazakhstan in November 2025 but denied entry once he arrived. Petitioner has thus provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Now, "the Government must respond with evidence sufficient to rebut [Petitioner's] showing." Id. The Government provides no evidence to rebut Petitioner's showing. The only reason articulated is that "ERO works to either obtain travel documents for removal to Kazakhstan or obtain approval for third country removal." (Doc. 24 at 2.) Respondents provide no reason why efforts to remove him to Kazakhstan are now significantly likely in the near future. Respondents also fail to provide any details regarding actions that have been and are being taken in pursuing Petitioner's removal to a third country. Thus, the Court finds that Respondents have not responded with evidence sufficient to rebut Petitioner's showing.

Respondents instead focus their argument on Petitioner's extensive criminal history. Respondents appear to contend that because of his criminal background, he is a danger to the community, and therefore detention is permissible. This argument was rejected by the Supreme Court in Zadvydas. The Zadvydas Court held that § 1231(a)(6) simply did not authorize an alien's potentially indefinite detention, even if such detention were premised on "protecting the community

6

from dangerous aliens." Zadvydas, 533 U.S. at 697. Notably, Zadvydas was a resident alien with a long criminal record whose continued detention by the Government was based on a history of flight from both criminal and deportation proceedings. Id. at 684. In addition, Kim Ho Ma was a resident alien who had been convicted of manslaughter for a gang-related shooting. Id. at 685-86. "If a need to protect the community did not justify the detention of Ma --a killer--under § 1231(a)(6), it similarly does not justify the detention of" Petitioner. Tuan Thai v. Ashcroft, 366 F.3d 790, 797 (9th Cir. 2004).

"[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." Zadvydas, 533 U.S. at 699–700. See Huang v. Albarran, No. 1:25-cv-01308 JLT EPG, 2025 WL 2986885, at *4 (E.D. Cal. Oct. 23, 2025) ("When, as here, a noncitizen does not leave or is not removed within the 90-day removal period, the individual, 'pending removal, shall be subject to supervision.' 8 U.S.C. § 1231(a)(3). 'As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention.' Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3 (N.D.Cal. Aug. 21, 2025). Noncitizens subject to a removal order may be released pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. See Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 154 (W.D.N.Y. 2025). Once released, those same regulations also govern revocation of release."). Thus, the Court finds that Petitioner's continued detention is unreasonable and no longer authorized by statute. He should be released on appropriate conditions of supervision.

## III.    ORDER

The Findings and Recommendation issued on March 11, 2026, are VACATED.

## IV.    RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be GRANTED and Respondents be directed to release Petitioner subject to an order of supervision in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

Rules of Practice for the United States District Court, Eastern District of California.  Within ten (10) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **March 19, 2026**                    /s/ *Sheila K. Oberto*
                                              UNITED STATES MAGISTRATE JUDGE